**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ROBERT KROP, et al.,** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **CIVIL NO. JKB-25-1672** |
| **UNITED STATES OF AMERICA, et al.,** | * | |
| **Defendants.** | * | |
| | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**MEMORANDUM**

Pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 17.) The Motion will be construed as a motion to dismiss, and it will be granted.

## I.   FACTUAL BACKGROUND

Plaintiffs Robert and Stephanie Krop, along with their children, bring this damages action against the United States and several federal officials (collectively, "Defendants") pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), based on charges of misconduct that allegedly occurred during an ultimately unsuccessful criminal prosecution of Robert Krop ("Mr. Krop") relating to his possession of machine guns.

According to the Complaint, Mr. Krop was a Class III Federal Firearms Licensee ("FFL") who operated one of the largest indoor shooting ranges in the Washington, D.C. area. (ECF No. 1 ¶ 1.) Under federal law, the possession or sale of machine guns is generally prohibited. 18 U.S.C. § 922(o). However, FFLs are allowed to possess and transfer machine guns for the limited purpose of using them in demonstrations to potential military or law enforcement purchasers. 27

C.F.R. § 479.105(d). For this exception to apply, the government agency requesting the machine gun demonstration must submit a letter, known as a "law letter," to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and the law letter must explain why the government agency is interested in viewing a demonstration of the weapon. *Id.*

In April 2023, Mr. Krop was indicted on multiple counts relating to an alleged conspiracy with the Sheriff of Frederick County, Charles Jenkins, to illegally obtain machine guns. (ECF No. 1 ¶ 1.) According to the indictment, Mr. Krop promised to support Jenkins politically if Jenkins submitted law letters to the ATF stating that the Frederick County Sheriff's Office required demonstrations of machine guns from Mr. Krop. Indictment ¶ 14, *United States v. Krop*, 23-CR-123 (D. Md. 2023) (ECF No. 1). But the indictment alleged that Mr. Krop's real purpose in obtaining the machine guns was to rent them out to his customers, not to demonstrate them to the Sheriff's Office. *Id.* The indictment alleged that Mr. Krop made over $100,000 in profit from the rental of machine guns in 2018 and 2019. *Id.*

The Complaint in this matter alleges, however, that the indictment was secured via misconduct. Plaintiffs argue that the lead ATF case agent "intentionally, knowingly, and recklessly made false statements and representations and material omissions of facts in his reports, affidavits, and other communications with federal prosecutors, thereby initiating a malicious prosecution of Robert Krop."[1] (ECF No. 1 ¶ 8.) Plaintiffs also contend that Defendants knew or

---

[1] During the criminal proceeding, Mr. Krop was represented by Daniel Cox. Judge Stephanie Gallagher presided in the case. Judge Gallagher found that, during the pendency of the criminal case, Mr. Krop—through his counsel—made "repeated derogatory references to the case agent's age and country of birth throughout his filings, seemingly insinuating some type of misconduct with absolutely no basis." (ECF No. 17-17 at 5.) Judge Gallagher ordered Mr. Krop and his counsel to stop this behavior. (*Id.*) In the instant matter, Mr. Krop is again represented by Mr. Cox. Heedless of Judge Gallagher's admonition, in the Complaint in this matter Mr. Cox again makes a gratuitous and entirely irrelevant reference to the citizenship of the ATF case agent. (ECF No. 1 ¶ 8.) Such behavior by Mr. Cox—an officer of the Court—does not align with the Court's expectations nor its professional standards. Neither the Court nor the law abide discrimination based on national origin. Mr. Cox is CAUTIONED to conform his conduct to the professional standards of this Court.

2

recklessly disregarded the fact that the machine guns never left Mr. Krop's gun range and normally remained in locked safes. (*Id.* ¶ 9.) Plaintiffs further assert that Defendants "knew or recklessly disregarded the fact that any interactions Mr. Krop had with the Sheriff were legitimate normal business and safety interactions and were not part of any unlawful scheme to enrich himself." (*Id.* ¶ 10.) According to the Complaint, federal prosecutors relied on these false statements and withheld this exculpatory evidence to obtain search warrants which were used to surveil Mr. Krop. (*Id.* ¶¶ 57–58.)

Plaintiffs allege that the government's misconduct continued once the prosecution formally commenced. The Complaint seems to accuse federal agents of attempting to intimidate Mr. Krop's attorney from filing a reply brief in support of a motion to dismiss the indictment. (*Id.* ¶ 40.) The Complaint then alleges that prosecutors secured a "Redacted Indictment" without re-presentation to a grand jury. (*Id.* ¶ 42.) Judge Gallagher later dismissed this indictment after a Speedy Trial Act violation. (*Id.* ¶ 46.) Approximately three-and-a-half weeks later, a grand jury indicted Mr. Krop once again, and the government issued an accompanying press release which allegedly "caused Mr. Krop and his businesses to be falsely portrayed as an economic fraud and criminal machine gun trafficker endangering his community and the United States." (*Id.* ¶ 50.) Mr. Krop moved to dismiss the new indictment, arguing that the new indictment violated a previous order of Judge Gallagher purportedly requiring that any new indictment be brought within three weeks. (*See id.* ¶ 47.) However, Judge Gallagher evidently interpreted her prior order differently. She did not dismiss the new indictment and the case moved toward trial.

Shortly before trial, Mr. Krop received grand jury transcripts which allegedly showed that the ATF and the United States Attorney's Office "committed numerous tortious violations of his constitutional and common law civil rights." (*Id.* ¶ 51.) At trial, testimony was allegedly adduced

3

which showed that "the Biden administration ATF['s]" law letter policy was created for the purpose of "maliciously prosecut[ing] Federal Firearms licensees including Mr. Krop." (*Id.* ¶ 52.) Ultimately, after a six-day trial, the jury acquitted Mr. Krop on all counts.

Plaintiffs now bring six *Bivens* claims against the former Attorney General, the former Director of the ATF, four ATF special agents, and several John and Jane Does who were "federal law enforcement agents, supervisors, and other officials who participated in the investigation and prosecution of Mr. Krop." (*Id.* ¶¶ 22–28.) These claims are for (1) malicious prosecution and fabrication of evidence in violation of numerous constitutional rights; (2) violation of Mr. Krop's state and federal constitutional rights to equal protection and due process; (3) violation of Mr. Krop's state and federal constitutional rights to free speech and free association; (4) violation of Mr. Krop's rights under the Second Amendment; (5) violation of Mr. Krop's rights to counsel and to a speedy trial under the Sixth Amendment; and (6) violation of Mr. Krop's rights under the Fourth Amendment. Plaintiffs also purport to sue the United States under the Federal Tort Claims Act ("FTCA") (*id.* ¶¶ 14, 17), but the Complaint does not formally make an FTCA claim and, in their briefing, Plaintiffs seem to concede that any such claim is not properly exhausted (ECF No. 18 at 12).

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may seek to dismiss a complaint based on a lack of subject matter jurisdiction. "Where, as here, a defendant urges dismissal on the grounds that the complaint's allegations are insufficient to confer jurisdiction," the Court analyzes the motion under the same standard as one brought under Rule 12(b)(6). *Ministry of Def. of State of Kuwait v. Naffa*, 105 F.4th 154, 159 (4th Cir. 2024).

4

Under that standard, the Court must ordinarily "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). But the Court may also consider documents outside of the Complaint if they are subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Judicial notice is appropriate if a document is a matter of public record. *Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). The indictments of Mr. Krop are matters of public record, so the Court will consider them. *See Clehm v. BAE Sys. Ordnance Sys., Inc.*, Civ. No. 7:16-00012, 2018 WL 1702399, at *2 (W.D. Va. Apr. 6, 2018); *Knott v. Wedgwood*, Civ. No. DKC 13-2486, 2015 WL 1393567, at *1 (D. Md. Mar. 24, 2015).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

## III. DISCUSSION

Defendants make several arguments in support of their Motion. They allege (1) that the Complaint is impermissibly vague as to the specific conduct of each Defendant and therefore must be dismissed; (2) that the Court lacks jurisdiction over the claims against the United States; (3)

5

that Plaintiffs lack a cause of action under *Bivens* against the individual Defendants; (4) that even if a *Bivens* cause of action does exist, Plaintiffs still fail to state a claim on the merits; and (5) that even if Plaintiffs can state a claim, Defendants are protected by qualified and absolute immunity. The Court concludes that Plaintiffs lack a *Bivens* cause of action against the individual Defendants and that the claims against the United States must be dismissed for lack of subject matter jurisdiction because Plaintiffs have not shown that the United States has waived its sovereign immunity.[2] Thus, the Court need not address Defendants' other arguments.

## A. Claims Against the Individual Defendants

The Court first addresses Plaintiffs' claims against the individual Defendants.[3] Before addressing the merits of these claims, the Court first determines if a cause of action is available to bring them. *Annappareddy v. Pascale*, 996 F.3d 120, 132 (4th Cir. 2021). Because Defendants are federal officers who are being sued in their personal capacities for money damages, there is no statutory cause of action against them. *Id.* at 133. Rather, "if there is a remedy, then it must come in the form of the implied cause of action first recognized in *Bivens*, allowing suits for damages against federal officers alleged to have violated a citizen's rights under the Constitution."[4] *Id.* (internal quotation marks omitted). The Supreme Court has recognized such a cause of action only three times. *See Bivens*, 403 U.S. at 396–97 (permitting suit based on a Fourth Amendment

---

[2] Defendants seek Rule 12 dismissal based on these arguments, rather than Rule 56 summary judgment, so the Court will treat the Motion accordingly. (*See* ECF No. 17-1 at 17–29 (citing only to the Complaint rather than to any exhibits attached to the Motion, asserting that "the Complaint must be dismissed for failure to state a claim because no count is viable under *Bivens*," and stating that "[t]he United States is an improper defendant in this action and should be dismissed for lack of subject matter jurisdiction.").)

[3] Notably, each Count alleges only a violation of Mr. Krop's rights, not the rights of the other Plaintiffs. While this pleading defect may be an independent basis to dismiss the claims of Stephanie Krop and the Krop children, the Court need not decide this issue because it concludes that they lack a cause of action in the first place.

[4] For this reason, Plaintiffs' claims under the Maryland Declaration of Rights will be dismissed. A *Bivens* action is only available to vindicate federal constitutional rights, not state constitutional rights, and Plaintiffs have not identified any other case or statute that would permit them to sue Defendants for violating the Maryland Declaration of Rights.

violation involving the use of excessive force during a warrantless search and seizure); *Davis v. Passman*, 442 U.S. 228, 247–48 (1979) (same but for a Fifth Amendment sex discrimination claim against a Congressman); *Carlson v. Green*, 446 U.S. 14, 16–17 (1980) (same but for an Eighth Amendment inadequate care claim brought by a federal prisoner). Since *Carlson*, the Supreme Court has refrained from recognizing additional implied causes of action against federal officers for damages. That is because, according to the Supreme Court, it is ordinarily the province of Congress to create damages remedies, not the Judiciary. *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017). Thus, nowadays, "recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (quoting *Ziglar*, 582 U.S. at 135).

There is a two-step framework "for determining whether a *Bivens* remedy is available," and this framework "places significant obstacles in the path to recognition of an implied cause of action." *Annappareddy*, 996 F.3d at 133. At the first step, "the [C]ourt must determine whether a claim falls within the causes of action already authorized under the Supreme Court's three prior *Bivens* cases or whether it arises in a new context or involves a new category of defendants." *Mays v. Smith*, 70 F.4th 198, 202 (4th Cir. 2023) (internal quotation marks omitted). "To present a new context, a radical difference is not required." *Annappareddy*, 996 F.3d at 133 (internal quotation marks omitted). A non-exhaustive list of meaningful differences includes:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

7

*Ziglar*, 582 U.S. at 140. If a claim does not present a new context, then a *Bivens* remedy is available. *Hicks v. Ferreyra*, 64 F.4th 156, 166 (4th Cir. 2023). But if the claim does present a new context, as most will, then the Court must determine if there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 582 U.S. at 136. At bottom, if there is "*any* rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed," then the Court must not imply a cause of action. *Egbert*, 596 U.S. at 496 (emphasis in original) (internal quotation marks omitted).

### 1. New Context

Plaintiffs bring claims under five different Amendments to the Constitution, namely the First, Second, Fourth, Fifth, and Sixth Amendments.[5] Plaintiffs also bring a claim for malicious prosecution and fabrication of evidence that purports to be based on violations of all five of these Amendments.

#### a. Non-Fourth Amendment Claims

Each of Plaintiffs' non-Fourth Amendment claims presents a new context "[b]ecause a new context arises when there is a new constitutional right at issue." *Egbert*, 596 U.S. at 498 (internal quotation marks omitted). As recounted above, the Supreme Court has only recognized *Bivens* actions for a narrow set of claims brought under the Fourth Amendment, Fifth Amendment, and Eighth Amendment.

Here, Plaintiffs' First Amendment claims sound in retaliation, viewpoint discrimination, and infringement of the right to free association. (ECF No. 1 ¶¶ 88, 93–95.) Each of these claims

---

[5] The Complaint also alludes to the Fourteenth Amendment (ECF No. 1 ¶ 86), but Plaintiffs do not advance any Fourteenth Amendment claim in their briefing. The Court also cannot discern how the Fourteenth Amendment may apply because Plaintiffs complain of actions taken by federal officials, not state officials. Thus, to the extent that Plaintiffs bring a Fourteenth Amendment claim, that claim will be dismissed.

invokes a new constitutional right and thus presents a new *Bivens* context. *See Egbert*, 596 U.S. at 498 ("[T]here is no *Bivens* cause of action for [a] First Amendment retaliation claim."); *Doe v. Meron*, 929 F.3d 153, 162, 169 (4th Cir. 2019) (finding that a First Amendment claim based on the rights to parentage and familiar relations presented a new context). The same is plainly true of the Second Amendment claim, which Plaintiffs do not dispute (*see* ECF No. 18 at 13).

Moving onto the Fifth Amendment claims, Plaintiffs assert that the alleged malicious prosecution of Mr. Krop and fabrication of evidence against him violated their Fifth Amendment rights to due process and equal protection. While *Davis* was a Fifth Amendment case, Plaintiffs' claims still present new contexts because they do not concern sex discrimination in the workplace, which was at issue in *Davis*. *See Annappareddy*, 996 F.3d at 134 ("Although the Supreme Court did recognize a *Bivens* cause of action in a Fifth Amendment equal protection case arising from alleged sex discrimination in federal employment, the fabrication and destruction of evidence claims here are far afield from the sex discrimination context presented in *Davis*." (citation modified)). Recognizing this, Plaintiffs concede that their Fifth Amendment claims present new contexts. (ECF No. 18 at 16.)

Plaintiffs also bring claims under the Sixth Amendment for violation of Mr. Krop's rights to counsel and to a speedy trial. (ECF No. 1 ¶¶ 99–102.) In their briefing, however, they (confusingly) seem to argue that these are not standalone claims. Rather, Plaintiffs contend that they are "part of a broader pattern of constitutional misconduct underlying the malicious prosecution, due process, and equal protection claims." (ECF No. 18 at 17.) Whether these claims are pled on a standalone basis or not, they present new *Bivens* contexts because the Supreme Court has never recognized a Sixth Amendment *Bivens* claim. *See, e.g., Beasley v. Edgefield Mailroom Clerks*, Civ. No. 4:24-2597-TMC-TER, 2024 WL 4805003, at *3 (D.S.C. May 15, 2024), *report*

9

*and recommendation adopted*, Civ. No. 4:24-02597-TMC, 2024 WL 4803071 (D.S.C. Nov. 15, 2024); *Thompson v. Rogers*, No. 21-3197-SAC, 2021 WL 4243127, at *4 (D. Kan. Sept. 17, 2021) (collecting cases). Plaintiffs do not contest this. Rather, they argue that the Complaint has pled particularly egregious Sixth Amendment violations and that discovery is needed to substantiate them. (ECF No. 18 at 18.) But this argument goes only to the sufficiency of the claims, not to whether Plaintiffs have the ability to bring the claims in the first place. Accordingly, the Court concludes that Plaintiffs' Sixth Amendment claims arise in new *Bivens* contexts.

### b. Fourth Amendment Claims

In Count I, Plaintiffs allege that Defendants maliciously prosecuted Mr. Krop and fabricated evidence against him, both in violation of the Fourth Amendment. (ECF No. 1 ¶ 86.) And in Count VI, Plaintiffs allege that Defendants made false statements in order to obtain a search warrant which authorized the seizure of Mr. Krop's property. (*Id.* ¶ 108; ECF No. 18 at 14–15.) Initially, these claims appear closer to hitting the mark because *Bivens* itself was a Fourth Amendment case. However, in *Annappareddy*, the Fourth Circuit addressed nearly identical Fourth Amendment claims and found that they presented new *Bivens* contexts. 996 F.3d at 137. *Annappareddy* is binding precedent, and it requires the same conclusion here.

In *Annappareddy*, the plaintiff (Annappareddy) had previously been indicted at the request of the Department of Justice for Medicaid fraud, and he was convicted at trial. *Id.* at 126, 129. However, post-trial, Annappareddy discovered that the government had used intentionally flawed methodologies to evaluate his company's invoices, had procured search warrants based on these falsified analyses, and had not disclosed any of this before trial despite the government's apparent awareness of its missteps. *Id.* at 127–29. The parties jointly moved for a new trial, which was granted. *Id.* at 129. However, before the second trial could commence, the government disclosed

10

that it had destroyed critical evidence. *Id.* The district court then dismissed the indictment with prejudice. *Id.*

Annappareddy sued several of the federal agents who had investigated his case, bringing several *Bivens* claims. He alleged two Fourth Amendment violations: that the agents knowingly relied on false information to secure search warrants and that they used similarly false evidence to secure the indictment and arrest warrant against him. *Id.* at 135. The Fourth Circuit held that these claims presented new contexts. *Id.* at 137. It explained that although *Bivens* also involved a Fourth Amendment violation, the search and seizure in that case were made without a warrant. *Id.* at 135. Meanwhile, the relevant searches and the arrest of Annappareddy were all made with warrants. *Id.* And that difference was dispositive because it "implicate[d] a distinct Fourth Amendment guarantee—that 'no Warrants shall issue, but upon probable cause'—governed by different legal standards." *Id.* (quoting U.S. Const. amend. IV). Further, Annappareddy's claims had other significant differences with the claim presented in *Bivens*, namely different alleged misconduct and much more extensive investigation by the government. *Id.* at 136. Thus, proving Annappareddy's claims "would pose a greater risk of intruding on the investigatory and prosecutorial functions of the executive branch." *Id.* As a result, the Fourth Circuit found that the claims presented new *Bivens* contexts. *Id.* at 137.

Plaintiffs' Fourth Amendment allegations are nearly indistinguishable from Annappareddy's. Because the search of Mr. Krop's property was executed pursuant to a warrant (ECF No. 1 ¶ 108), Plaintiffs' *Bivens* claim premised on this conduct presents a new context. Similarly, *Annappareddy* forecloses any *Bivens* claim based on the alleged presentation of fabricated evidence to the grand jury to secure the new indictment and subsequent arrest warrant.

11

The exact same sequence occurred in *Annappareddy*, and the Fourth Circuit determined that there was a new *Bivens* context. *See Annappareddy*, 996 F.3d at 135.

Plaintiffs seek to distinguish *Annappareddy* by arguing that the warrants in that case were all alleged to be procured in good faith and with truthful affidavits. But that is incorrect. The complaint in *Annappareddy* made the same allegations that the Complaint makes here—that the investigating agents were aware of or recklessly disregarded the fabricated evidence when applying for the warrants. *Id.* at 128. Further, as in *Annappareddy*, the suggested misconduct that Mr. Krop allegedly experienced is far afield from what occurred in *Bivens*, and the multi-year, complex investigation and prosecution of Mr. Krop involved "information-gathering and case-building activities that represent a different part of police work than the apprehension, detention, and physical searches at issue in *Bivens*." *Id.* at 136 (internal quotation marks omitted). Thus, *Annappareddy* compels the conclusion that Plaintiffs' Fourth Amendment claims present new *Bivens* contexts.[6]

### 2. Special Factors Counselling Hesitation

All of Plaintiffs' federal constitutional claims present new *Bivens* contexts. There are also special factors counselling hesitation before extending *Bivens* to these new contexts. The Supreme Court "has not defined the phrase 'special factors counselling hesitation.'" *Ziglar*, 582 U.S. at 136. But it has explained "that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* If there is even a single reason to believe that Congress is the

---

[6] Plaintiffs also allege that a warrantless search of Mr. Krop's electronic communications occurred, but they concede that this Fourth Amendment claim presents a new context. (ECF No. 17-1 at 24 (citing *Attkisson v. Holder*, 925 F.3d 606, 621).)

12

institution better suited to weigh these costs and benefits, then a court should not imply a *Bivens* cause of action. *Egbert*, 596 U.S. at 496.

The Court first addresses Plaintiffs' argument that *Bivens* should be extended to the Second Amendment context. While there is no binding authority on the issue, there is ample persuasive authority that rejects any extension of *Bivens* to this context. *See, e.g.*, *Meeks v. Larsen*, 611 F. App'x 277, 286 (6th Cir. 2015); *Olson v. Cass Cnty. Sheriff*, Civ. No. 3:23-179, 2024 WL 6860002, at *9–10 (D.N.D. Jan. 30, 2024), *report and recommendation adopted*, Civ. No. 3:23-179, 2024 WL 6859998 (D.N.D. Feb. 23, 2024) (collecting cases); *see also Ragan v. Fed. Bureau of Investigation Nat'l Instant Crim. Background Check Sys. Section*, Civ. No. EA-24-2771, 2025 WL 2823009, at *4 (D. Md. Oct. 3, 2025) ("Mr. Ragan does not advance a *Bivens* claim and any attempt to do so would be unavailing because the Supreme Court has not recognized a Second Amendment claim under *Bivens*."). Plaintiffs resist this authority by arguing that the Supreme Court's recent Second Amendment jurisprudence has broadened the scope of the right to keep and bear arms. (ECF No. 18 at 13–14.) But Plaintiffs do not explain how this favors extending *Bivens* to the Second Amendment context. If anything, the recent expansion of the right to keep and bear arms gives the Court even more pause in extending *Bivens* to this context. Although the Supreme Court has expanded the Second Amendment's scope, Congress is the institution that remains "in a better position to decide whether or not the public interest would be served by imposing a damages action" for violations of this newly expanded right. *Egbert*, 596 U.S. at 499 (internal quotation marks omitted).

Several other special factors apply to the remainder of Plaintiffs' claims (as well as their Second Amendment claims). First, the Supreme Court has observed that "[r]ecognizing any new *Bivens* action entails substantial social costs, including the risk that fear of personal monetary

13

liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Id.* (citation modified). Second, the Supreme Court has explained that one special factor that will always counsel hesitation is the existence of "an alternative remedial structure." *Id.* at 493. That is true even if the alternative remedial structure does not provide complete relief. *Id.* Third, if a claim requires "after-the-fact inquiries" into the propriety of a federal investigation and forces a jury to determine federal officers' knowledge and state of mind, then the claim "pose[s] the kind of risk of intrusion on executive-branch authority to enforce the law and prosecute crimes that counsels against implying a cause of action for damages." *Annappareddy*, 996 F.3d at 134–35 (internal quotation marks omitted).

Each of these special factors counselling hesitation are present here. First, extending a *Bivens* cause of action to these new contexts would undoubtedly entail substantial social costs because it would create a risk that federal officials would be inhibited from performing their duties. While this special factor is applicable to all of the claims, it is particularly relevant to the First Amendment claims because the Supreme Court specifically noted in *Egbert* that "[e]xtending *Bivens* to alleged First Amendment violations would pose an acute risk of increasing such costs." *Egbert*, 596 U.S. at 499.

Second, alternative remedial structures exist. In particular, the Hyde Amendment permits Mr. Krop to seek attorneys' fees if he was the victim of a bad faith prosecution. *See Annappareddy*, 996 F.3d at 137. Indeed, he did precisely that. *See* Motion for Attorneys' Fees, *United States v. Krop*, 24-CR-174 (D. Md. 2024) (ECF No. 91). Although Judge Gallagher recently denied Mr. Krop's motion for attorneys' fees, *United States v. Krop*, Crim. No. SAG-24-174, 2026 WL 2085076 (D. Md. July 20, 2026), this does not alter the Court's conclusion. The "relevant question is not whether . . . the court should provide for a wrong that would otherwise go unredressed."

14

*Egbert*, 596 U.S. at 493. Rather, the Court "must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." *Id.* (internal quotation marks omitted). Through the Hyde Amendment, Congress determined that attorneys' fees should be recoverable for bad faith prosecutions. Simply because Mr. Krop failed to gain relief under Congress' statutory scheme does not mean that the Court may fashion a new, judicially-created remedy for him. Rather, the fact that Congress has provided an avenue to seek only more limited relief—and has set a difficult standard for attaining it—itself "suggests that it considered the issue and made a deliberate choice" to provide this narrower form of relief. *Annappareddy*, 996 F.3d at 137 (citation omitted). At the very least, it "counsels against [the Court] stepping in to create a freestanding remedy in damages here." *Id.* (internal quotation marks omitted).

In addition to the Hyde Amendment, Plaintiffs may also have a pathway to relief under the FTCA. Their Complaint acknowledges as much. (ECF No. 1 ¶¶ 14, 17.) Even if Plaintiffs have not pursued this form of relief, it remains an alternative remedial structure that counsels hesitation before extending *Bivens*. *See Johnson v. Thompson*, Civ. No. 4:23-3558-SAL-TER, 2023 WL 7091970, at *3 (D.S.C. Sept. 14, 2023), *report and recommendation adopted*, Civ. No. 4:23-3558-SAL, 2023 WL 7077793 (D.S.C. Oct. 26, 2023).

Finally, extending *Bivens* to this case would permit just the sort of "after-the-fact-inquiries" into the Executive's investigative and prosecutorial functions that counseled hesitation in *Annappareddy*. *Annappareddy*, 996 F.3d at 134. As was exactly the case in *Annappareddy*, "[p]roving claims like these—the falsification and destruction of evidence by prosecutors as well as investigators, in connection with a criminal prosecution—would invite a wide-ranging inquiry into the evidence available to investigators, prosecutors, and the grand jury." *Id.* (internal

15

quotation marks omitted). This would then "require a jury to determine what officers knew, what they did not know, and their state of mind at the time." *Id.* (citation modified) (internal quotation marks omitted). These considerations counsel against extending *Bivens* to Plaintiffs' claims.

In sum, because the Court has ample "reason to pause" before applying *Bivens* to each of the new contexts presented in this case, it "may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492. Accordingly, each of Plaintiffs' claims against the individual Defendants will be dismissed.

### B. Claims Against the United States

The Court ends with the claims against the United States. To bring suit against the United States, Plaintiffs must first carry the burden of showing that the United States' sovereign immunity has been waived. *F.D.I.C. v. Meyer*, 510 U.S. 471, 484 (1994); *see Blanco Ayala v. United States*, 982 F.3d 209, 214 (4th Cir. 2020). While Plaintiffs occasionally mention the FTCA in their briefing (*e.g.*, ECF No. 18 at 19, 24), they make no argument as to how this statute has waived the United States' sovereign immunity in this case, nor do they make any other argument on the subject of sovereign immunity. Thus, Plaintiffs have not met their burden of proving that the United States has waived its sovereign immunity, so the claims against the United States will be dismissed without prejudice for lack of subject matter jurisdiction. *See Albert v. Lierman*, 152 F.4th 554, 563 n.9 (4th Cir. 2025). Even had Plaintiffs shown that the United States' sovereign immunity has been waived, the Complaint would still fail to state a claim because *Bivens* actions are not available against the United States. *Meyer*, 510 U.S. at 486.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 17) will be granted. A separate Order follows.

DATED this 23 day of July, 2026.

BY THE COURT:

James K. Bredar
United States District Judge

17